UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | | |
|---|---|---|
| PROPANE RESOURCES SUPPLY & | ) | |
| MARKETING, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. <u>12-cv-2636 EFM/DJW</u> |
| | ) | |
| PROGAS L.P. & SUPPLY, INC. | ) | |
| Registered Agent: | ) | |
| Ben Winke | ) | |
| 1701 Sioux St. | ) | |
| Burlington, IA 52601 | ) | |
| | ) | |
| WIN PROPANE CO., LLC | ) | |
| Registered Agent: | ) | |
| Ben Winke | ) | |
| 1674 Green Bay Rd. | ) | |
| Wever, IA 52658 | ) | |
| | ) | |
| WIN ELECTRICAL, LLC | ) | |
| Registered Agent: | ) | |
| William Sidney Smith | ) | |
| 801 Grand Ave, Ste 3700 | ) | |
| Des Moines, IA 503093715 | ) | |
| | ) | |
| BIG RIVER BEND CORP. | ) | |
| Registered Agent: | ) | |
| Ben Winke | ) | |
| 2750 Diamond Ridge Dr. | ) | |
| Burlington, IA 52601 | ) | |
| | ) | |
| BEN WINKE, individually. | ) | |
| 2750 Diamond Ridge Dr. | ) | |
| Burlington, IA 52601 | ) | |
| | ) | |
| CHRISTA WINKE, individually, | ) | |

| | |
|---|---|
| 2750 Diamond Ridge Dr. | ) |
| Burlington, IA 52601 | ) |
| | ) |
| JOHN DOES 1-100. | ) |
| | ) |
| Defendants. | ) |

## <u>PROPANE RESOURCES SUPPLY & MARKETING, L.L.C.'S COMPLAINT</u>

COMES NOW, Propane Resources Supply & Marketing, L.L.C. (PRSM) for its Complaint against Progas L.P. & Supply, Inc. (Progas), Win Propane Co., LLC (Win Propane), Win Electrical, LLC (Win Electrical), Big River Bend Corp. (Big River Bend), Ben Winke, Individually, Christa Winke, Individually, and John Does 1-100, and states and alleges as follows:

## <u>THE PARTIES</u>

1. PROPANE RESOURCES SUPPLY & MARKETING, L.L.C. is a Kansas limited liability company with its principal place of business in Mission, Kansas.

2. PROGAS L.P. & SUPPLY, INC. is an Iowa corporation with its principal place of business in Iowa.

3. Progas may be served through its Registered Agent: Ben Winke at 1701 Sioux St., Burlington, IA 52601.

4. WIN PROPANE CO., LLC is an Iowa limited liability company with its principal place of business in Iowa.

5. Win Propane may be served through its Registered Agent: Ben Winke at 1674 Green Bay Rd. Wever, IA 52658.

6. WIN ELECTRICAL, LLC is an Iowa limited liability company with its principal place of business in Iowa.

7.  Win Electrical may be served through its Registered Agent: William Sidney Smith at 801
    Grand Ave, Ste 3700 Des Moines, IA 50309371.

8.  BIG RIVER BEND CORP. is an Iowa corporation with its principal place of business in
    Iowa.

9.  Big River Bend may be served through its Registered Agent: Ben Winke 2750 Diamond
    Ridge Dr. Burlington, IA 52601.

10. BEN WINKE is a resident of Iowa.

11. Ben Winke may be served personally where he can be found or at his residence of, 2750
    Diamond Ridge Dr. Burlington, IA 52601.

12. CHRISTA WINKE is a resident of Iowa.

13. Christa Winke may be served personally where he can be found or at her residence of,
    2750 Diamond Ridge Dr. Burlington, IA 52601.

14. John Does 1-100 are persons and entities that conspired with the defendants named
    herein to cause harm to PRSM.  The defendants specifically named herein and others
    have prevented PRSM from learning the identities of these entities and persons who acted
    in concert with them and who caused harm to PRSM.  Upon information and belief, John
    Does 1-100 are not citizens of Kansas.

## JURISDICTION AND VENUE

15. Progas sought out and entered into contracts with PRSM in Mission, Kansas.

16. Big River Bend sought out and entered into contracts with PRSM in Mission, Kansas.

17. Ben Winke sought out and entered into contracts with PRSM in Mission, Kansas.

18. Christa Winke sought out and entered into contracts with PRSM in Mission, Kansas.

19. Progas breached contracts entered into with PRSM in Mission, Kansas.

20. Big River Bend breached contracts entered into with PRSM in Mission, Kansas.

21. Ben Winke breached contracts entered into with PRSM in Mission, Kansas.

22. Christa Winke breached contracts entered into with PRSM in Mission, Kansas.

23. Progas committed tortious acts in Kansas causing damages to PRSM in Mission, Kansas.

24. Big River Bend committed tortious acts in Kansas causing damages to PRSM in Mission, Kansas.

25. Ben Winke committed tortious acts in Kansas causing damages to PRSM in Mission, Kansas.

26. Christa Winke committed tortious acts in Kansas causing damages to PRSM in Mission, Kansas.

27. Win Propane committed tortious acts in Kansas causing damages to PRSM in Mission, Kansas.

28. Win Electrical committed tortious acts in Kansas causing damages to PRSM in Mission, Kansas.

29. Progas consented to jurisdiction and venue in the United States District Court for the District of Kansas in its written contracts with PRSM.

30. Ben Winke consented to jurisdiction and venue in the United States District Court for the District of Kansas in its written contracts with PRSM.

31. Christa Winke consented to jurisdiction and venue in the United States District Court for the District of Kansas in its written contracts with PRSM.

32. Big River Bend consented to jurisdiction and venue in the United States District Court for the District of Kansas in its written contracts with PRSM.

33. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

34. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, because this dispute involves a question of federal law.

35. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to this dispute occurred in this District.

## GENERAL ALLEGATIONS

36. Prior to 2002, PRSM began selling propane to Progas.

37. PRSM delivered to Progas copies of the written "General Terms and Conditions."

38. Progas did not object to the "General Terms and Conditions."

39. Each sale of propane by PRSM to Progas was sold pursuant to the "General Terms and Conditions."

40. On or about October 2, 2002, Ben Winke executed and delivered a Guarantee, a true and correct copy of which is attached as Exhibit A.

41. Ben Winke agreed to guarantee all existing and future obligation of Progas.

42. On or about October 2, 2002, Christa Winke executed and delivered a Guarantee, a true and correct copy of which is attached as Exhibit A.

43. Christa Winke agreed to guarantee all existing and future obligations of Progas.

44. On or about May 24, 2011, Progas executed a Demand Promissory Note in the amount of $1,575,000 together with accrued interest at the annual rate of 18%, a true and correct copy of which is attached as Exhibit B.

45. On or about May 24, 2011 Progas executed and delivered a Guaranty, a true and correct copy of which is attached as Exhibit C.

46. Progas agreed to guarantee all existing and future obligations of Progas.

47. On or about May 24, 2011 Big River Bend executed and delivered a Guaranty, a true and correct copy of which is attached as Exhibit C.

48. Big River Bend agreed to guarantee all existing and future obligations of Progas.

49. On or about May 24, 2011, Progas executed a Security, Guarantee, and Pledge Agreement granting a security interest in assets up to $1,575,000, attached as Exhibit D.

50. On or about May 24, 2011, Big River Bend executed a Security, Guarantee, and Pledge Agreement granting a security interest in assets up to $1,575,000, attached as Exhibit D.

51. Progas, Ben Winke, Christa Winke, and Big River Bend have not performed under their signed contracts.

52. Progas owes PRSM at least $2,186,787.45 for unpaid invoices. Exhibit E.

53. Progas owes PRSM at least $1,975,949 based on its contractual obligations. Exhibit B, C.

54. Ben Winke owes PRSM at least $2,186,787.45 based on his contractual obligations. Exhibit A.

55. Christa Winke owes PRSM at least $2,186,787.45 based on her contractual obligations. Exhibit A.

56. Big River Bend owes PRSM at least $2,186,787.45 based on its contractual obligations. Exhibit C.

57. PRSM has made a demand for payment to Progas, Ben Winke, Christa Winke, and Big River Bend. Exhibit E, F.

## COUNT I: BREACH OF CONTRACTS AGAINST PROGAS

58. PRSM incorporates the preceding paragraphs as if set forth herein.

59. PRSM is a company that holds itself out as having knowledge or skill peculiar to the purchase and sale of propane.

60. PRSM is a merchant of propane.

61. Progas is a company that holds itself out as having knowledge or skill peculiar to the purchase and sale of propane.

62. Progas employs agents or brokers or other intermediaries who hold themselves out as having knowledge or skill peculiar to the purchase and sale of propane.

63. Progas is a merchant of propane.

64. Any transaction between PRSM and Progas involving the purchase and sale of propane was a transaction between merchants.

65. Between approximately January 20, 2010 and March 15, 2012, PRSM sold propane to Progas approximately 740 times. Exhibit E.

66. For each of the approximately 740 transactions, PRSM sent Progas a written confirmation and invoice of the contract for sale of propane.

67. Progas received each of the approximately 740 written confirmations and invoices.

68. Progas knew or had reason to know of the contents of each of the written confirmations and invoices of the contract for the sale of propane.

69. Progas never provided written objection to PRSM to any of the 740 written confirmations and invoices.

70. PRSM fully performed and satisfied all preconditions for payment under each of the 740 written confirmations and invoices.

71. Progas failed to pay or failed to timely pay each of the 740 written confirmations and invoices.

72. At least once each month, PRSM sent Progas a Statement showing the balance due on each of the written confirmations and invoices.

73. Progas never provided written objection to PRSM to the Statements.

74. The August 31, 2012 Statement is attached as Exhibit E.

75. Progas owes PRSM $2,186,787.45 as of August 31, 2011, with interest accruing at 18 percent per annum until payment is made in full.

WHEREFORE, PRSM prays for judgment in its favor on Count I in the amount of $2,186,787.45 including interest at 18% per annum through August 31, 2012 plus additional interest at 18% per annum until such time as payment may be made in full pursuant to the terms of the written confirmations and statements, as well as PRSM's costs, fees, and attorneys' fees and for such other relief as this court may deem just and proper.

## COUNT II: BREACH OF CONTRACT AGAINST PROGAS

76. PRSM incorporates the preceding paragraphs as if set forth herein.

77. On or about May 24, 2011, Progas executed a Demand Promissory Note in the amount of $1,575,000 together with accrued interest at the annual rate of 18%, a true and correct copy of which is attached as Exhibit B.

78. On or about August 27, 2012, PRSM made demand under the Demand Promissory Note. Exhibit F.

79. The amount due under the Demand Promissory Note is "the principal sum of $U.S. $1,575,000, together with accrued interest thereon computed at the annual rate of 18%." Exhibit B.

80. Through August 31, 2012, the total amount due under the Demand Promissory Note is the principal sum of $1,575,000, together with accrued interest of $400,949 including interest at 18% per annum.

81. Progas has paid no amounts due under the Demand Promissory Note.

82. PRSM fully performed and satisfied all preconditions for payment under the Demand Promissory Note

WHEREFORE, PRSM prays for judgment in its favor on Count II in the principal amount of principal sum of $1,575,000, together with accrued interest of $400,949 including interest at 18% per annum through August 31, 2012 plus additional interest at 18% per annum until such time as payment may be made in full pursuant to the terms of the Demand Promissory Note as well as PRSM's costs, and fees, all costs of reasonable collection, and attorneys' fees as provided for under the Note, and for such other relief as this court may deem just and proper.

## COUNT III: BREACH OF CONTRACT AGAINST PROGAS AND BIG RIVER BEND

83. PRSM incorporates the preceding paragraphs as if set forth herein.

84. On or about May 24, 2011 Progas executed and delivered a Guaranty, a true and correct copy of which is attached as Exhibit C.

85. Progas agreed to guarantee all existing and future obligations of Progas.

86. On or about May 24, 2011 Big River Bend executed and delivered a Guaranty, a true and correct copy of which is attached as Exhibit C.

87. Big River Bend agreed to guarantee all existing and future obligations of Progas.

88. Progas agreed to pay "all loans, drafts, overdrafts, checks, promissory notes, and all other debts, liabilities, and obligations of every kind owing by the Borrower [Progas] to Propane Resources Supply and marketing, L.L.C."

89. Big River Bend agreed to pay "all loans, drafts, overdrafts, checks, promissory notes, and all other debts, liabilities, and obligations of every kind owing by the Borrower [Progas] to Propane Resources Supply and marketing, L.L.C."

90. On or about August 31, 2012, PRSM made demand under the Guarantee. Exhibit F.

91. PRSM fully performed and satisfied all preconditions for payment under the Guarantee.

92. Progas has paid no amounts due under the Guarantee.

93. Progas owes PRSM $2,186,787.45 as of August 31, 2012, with interest accruing at 18 percent per annum until payment is made in full.

94. Big River Bend owes PRSM $2,186,787.45 as of August 31, 2012, with interest accruing at 18 percent per annum per annum until payment is made in full.

WHEREFORE, PRSM prays for judgment in its favor on Count III in the amount of $2,186,787.45 including interest at 18% per annum through August 31, 2012 plus additional interest at the rate of 18% until such time as payment may be made in full pursuant to the terms of the Note and Guarantee as well as all of PRSM's costs, and fees, all costs of reasonable collection, and attorneys' fees as provided for under the Note, and for such other relief as this court may deem just and proper.

## COUNT IV: BREACH OF CONTRACT
## AGAINST BEN WINKE AND CHRISTA WINKE

95. PRSM incorporates the preceding paragraphs as if set forth herein.

96. On or about October 2, 2002, Ben Winke executed a Guarantee, a true and correct copy of which is attached as Exhibit A.

97. Ben Winke agreed to pay "all loans, drafts, overdrafts, checks, promissory notes, and all other debts, liabilities, and obligations of every kind owing by the Borrower [Progas] to Propane Resources Supply and marketing, L.L.C."

98. On or about October 2, 2002, Christa Winke executed a Guarantee, a true and correct copy of which is attached as Exhibit A.

99. Christa Winke agreed to pay "all loans, drafts, overdrafts, checks, promissory notes, and all other debts, liabilities, and obligations of every kind owing by the Borrower [Progas] to Propane Resources Supply and marketing, L.L.C."

100.    On or about August 31, 2012, PRSM made demand under the Guarantee. Exhibit F.

101.    PRSM fully performed and satisfied all preconditions for payment under the Guarantee.

102.    Ben Winke has paid no amounts due under the Guarantee.

103.    Christa Winke has paid no amounts due under the Guarantee.

104.    Progas owes PRSM $2,186,787.45 as of August 31, 2012, with interest accruing at 18 percent per annum until payment is made in full.

105.    Ben Winke owes PRSM $2,186,787.45 as of August 31, 2012, with interest accruing at 18 percent per annum until payment is made in full.

106.     Christa Winke owes PRSM $2,186,787.45 as of August 31, 2012, with interest accruing at 18 percent per annum until payment is made in full.

WHEREFORE, PRSM prays for judgment in its favor on Count IV in the amount of $2,186,787.45 including interest at 18% per annum through August 31, 2012 plus additional interest at 18% per annum until such time as payment may be made in full pursuant to the terms of the Guarantee as well as PRSM's costs, and fees, all costs of reasonable collection, and attorneys' fees as provided for under the Note, and for such other relief as this court may deem just and proper.

**COUNT V: EQUITABLE RELIEF: UNJUST ENRICHMENT / QUANTUM MERUIT AGAINST PROGAS**

107.     PRSM incorporates the preceding paragraphs as if set forth herein.

108.     PRSM conferred a benefit upon Progas by:

    a.  extending credit to Progas, and

    b.  delivering propane to Progas.

109.     Progas appreciated the benefit.

110.     Progas had knowledge of the benefit.

111.     Progas retained the benefit without payment for its value.

112.     The fair value of the propane PRSM delivered to Progas is $1,617,915.08.

113.     The fair value of the credit PRSM extended to Progas is $568,873.37 through August 31, 2012.

114.     The fair value of the credit PRSM extended continues to increase as long as the fair value of the propane delivered remains unpaid.

115.     The fair interest rate for the value of the credit PRSM extended is 18 percent.

116.     Progas would be unjustly enriched were it allowed to retain the benefits received

without payment.

WHEREFORE, PRSM prays for judgment in its favor under Count V in the amount of
$2,186,787.45 including interest at 18% per annum through August 31, 2012 plus additional
interest through payment, prejudgment and postjudgement interest, as well as PRSM's costs,
and fees, all costs of reasonable collection, and attorneys' fees, and for such other relief as
this court may deem just and proper.

### COUNT VI: ACTION ON ACCOUNT
### AGAINST PROGAS

117.     PRSM incorporates the preceding paragraphs as if set forth herein.

118.     Progas had an account with PRSM for the sale of propane:

    a.   Between approximately January 20, 2010 and March 15, 2012, PRSM sold Progas

propane approximately 740 times. Exhibit E.

    b.   PRSM fully performed and satisfied all preconditions for payment under each of

the 740 written confirmations and invoices.

    c.   Progas failed to pay or failed to timely pay each of the 740 written confirmations

and invoices.

    d.   At least once each month, PRSM sent Progas a Statement showing the balance

due on each of the written confirmations and invoices.

    e.   Progas never provided written objection to PRSM to the Statements.

    f.   PRSM fully performed and satisfied all preconditions for payment under each of

the 740 written confirmations and invoices.

    g.   PRSM demanded payment under each of the written confirmations and invoices.

119.     The August 31, 2012 Statement is attached as Exhibit E.

120.    Progas never provided written objection to PRSM to the August 31, 2012 Statement.

121.    Progas owes PRSM $2,186,787.45 as of August 31, 2011, with interest accruing at 18 percent per annum until payment is made in full.

WHEREFORE, PRSM prays for judgment in its favor on Count VI in the amount of $2,186,787.45 including interest at 18% per annum through August 31, 2012 plus additional interest at 18% per annum until such time as payment may be made in full, as well as PRSMS's costs, fees, and attorneys' fees and for such other relief as this court may deem just and proper.

## COUNT VII: FRAUDULENT MISREPRESENTATION AGAINST ALL DEFENDANTS

122.    PRSM incorporates the preceding paragraphs as if set forth herein.

123.    Progas granted a security interest in all its property and assets up to $1,575,000 on May 24, 2011. Exhibit D.

124.    Big River Bend granted a security interest in all its property and assets up to $1,575,000 on May 24, 2011. Exhibit D.

125.    PRSM has a perfected security interest in all assets of Progas. Exhibit G, L.

126.    PRSM drafted and sent a Guaranty to Ben Winke, Christa Winke, and Big River Bend in May 2011. Exhibit C.

127.    In January 2012, Progas received notice from the Iowa Secretary of State that its corporate filings were delinquent and that Progas would be dissolved.

128.    On or about April 30, 2012, Progas sold all of its assets to Win Propane and Win Electrical. Exhibit H, I.

129.    On or about April 30, 2012, Progas released all of its employees. Exhibit H, I.

130.     Upon information and belief, and at an as yet unknown date, all defendants contacted John Does 1-100, including without limit upon information and belief its bank to secure financing for the sale of Progas' assets.

131.     Upon information and belief all defendants facilitated the release of Lee County Bank & Trust's UCC Financing Statement on Progas' assets.

132.     In June 2012, Progas received a second notice from the Iowa Secretary of State that its corporate filings were delinquent and that Progas would be dissolved.

133.     On or about February 14, 2012, Ben Winke and Christa Winke caused Win Propane to be organized.

134.     On or about February 14, 2012, Ben Winke and Christa Winke caused Win Electrical to be organized.

135.     Ben Winke and Christa Winke are owners of Win Propane.

136.     Ben Winke and Christa Winke are owners of Win Electrical.

137.     On August 6, 2012, Ben Winke and Christa Winke filed a statement of authority with the Iowa Secretary of State for Win Propane. Exhibit G.

138.     On August 9, 2012, Ben Winke and Christa Winke allowed the Iowa Secretary of State to dissolve Progas. Exhibit J.

139.     On or about the time Progas was dissolved, Ben Winke and Progas sent PRSM an unsolicited "Promissory Note" affirming a portion of the debt Progas owes PRSM. Exhibit K.

140.     PRSM rejected the terms of the unsolicited "Promissory Note." Exhibit F.

141.     From approximately May 2011 through the present, defendants made false statements to PRSM and/or omissions of material fact, including without limit

misrepresenting the continued viability and existence of Progas and concealing that Progas had sold its assets to Win Propane and Win Electrical.

142.     The false statements to PRSM and omissions of material fact made from May 2011 through the present include:

    a.   Failing to inform PRSM that Progas was delinquent in its corporate filings.

    b.   Failing to inform PRSM that Progas was no longer an active entity.

    c.   Representing that Progas was a valid and active entity.

    d.   Transferring all assets out of Progas and to another entity.

    e.   Transferring all employees out of Progas and to another entity.

    f.   Failing to secure a release of, or full payment upon, PRSM's UCC perfected lien.

    g.   Failing to notify PRSM of the asset transfer under the written contracts. Exhibit A, B, C, D.

    h.   Materially altering the Guaranty on or about May 24, 2011. Exhibit C.

    i.   Failing to pay and/or receive full value for Progas' assets transferred.

    j.   Continuing to use Progas's bank accounts to send payments to PRSM to, in part, conceal that Progas had transferred assets and been dissolved.

143.     Defendants knew, or should have known that these statements of fact were false and material and that the omissions were material.

144.     Defendants intended for PRSM to rely upon the misrepresentations and/or omissions.

145.     PRSM reasonably relied upon the statements and representations of defendants.

146.     PRSM was damages as a result of relying on Defendants' misrepresentations and omissions, in an amount in excess of $75,000.

WHEREFORE, for the above stated reasons, PRSM demands judgment in its favor on Count VII of the Complaint, and prays for damages in an amount to be determined at trial, the costs and expenses of this action, including reasonable attorneys' fees, and for such other and further relief as to the Court shall deem just and proper.

### COUNT VIII: CONSPIRACY AGAINST ALL DEFENDANTS

147.    PRSM incorporates the preceding paragraphs as if set forth herein.

148.    Defendants conspired to defraud PRSM, and in fact defrauded PRSM, by selling all assets and transferring all employees of Progas to Win Propane and Win Electrical, causing PRSM to continue to extend credit and forego collection procedures.

149.    At various times Defendants met, joined together, planned and/or conspired to misrepresent and conceal the transfer of the assets for the purpose of delaying PRSM collection of debts and to hide the Progas assets from PRSM.  Specific acts in furtherance of the conspiracy include:

    a.   At a date yet to be discovered by the Plaintiff, Defendants met and conferred and conspired with John Does 1-100, including without limit upon information and belief Its bank, to arrange financing for the sale of Progas's assets to another entity.

    b.   Upon information and belief, Defendants met and conferred and conspired with John Does 1-100, including upon information and belief Its bank, and/or others whose identity is presently unknown to Plaintiff, regarding a plan to avoid repaying funds owed to PRSM while borrowing additional monies secured by assets already pledged to PRSM, substantially in excess of the assets' actual market value by concealing the sale of Progas's assets from PRSM.

c.  Defendants met and conferred and conspired with John Does 1-100, including upon information and belief its bank and/or others who are unknown to PRSM, to finance and sell Progas's assets.

d.  Defendants met and conferred and conspired with John Does 1-100, including upon information and belief Its bank and/or others who are unknown to PRSM, to sell Progas's assets and avoid PRSM's notes and lien while using an unrecorded release of Lee County Bank & Trust's UCC lien.

e.  On or about April 30, 2012, Defendants met and conferred and conspired with John Does 1-100, including upon information and belief its bank and/or others who are unknown to PRSM, to conceal the sale of Progas's assets from PRSM.

f.  Defendants met and conferred and conspired with John Does 1-100, including upon information and belief Its bank and/or others who are unknown to PRSM, to conceal the money paid and received for the sale Progas's assets.

g.  Defendants met and conferred and conspired with John Does 1-100, including upon information and belief its bank and/or others who are unknown to PRSM, to produce a false and fraudulent "Promissory Note."

h.  From January 2012 through August 2012, Defendants continued to inform PRSM CFO Mark Bailey that Progas was an ongoing concern with all of its assets and employees intact.

i.  From August 2012 through the filing of this lawsuit, Defendants met and conferred and conspired with John Does 1-100, including upon information and belief Its bank and/or others who are unknown to PRSM, to continue to use Progas's bank accounts at financial institutions John Does 1-100, including

without limit upon information and belief Its bank, to send payments to PRSM to, in part, conceal that Progas had transferred its assets and had been dissolved.

j.   Upon information and belief each of the defendants received monetary benefits from the sale of Progas's assets without repayment of PRSM notes and lien. Upon further information and belief, John Does 1-100, including without limit upon information and belief its bank, facilitated the distribution of assets and funds to each of the defendants for their respective roles in the scheme.

150.   All of the named Defendants agreed or understood that the purpose of their meetings, methods and agreements, were fraudulent and/or unlawful and would result in injury to PRSM and others.  All of the named Defendants agreed and understood that each would act in concert with the others to achieve this purpose.

151.   Defendants undertook these acts with malice and intent to injure PRSM and others.

152.   Defendants undertook these acts for their unlawful personal gain.

153.   The acts were both unlawful and tortious, constituting conversion of assets and the unlawful conveyance of property for purposes of defrauding PRSM.

154.   As a result of the acts PRSM was damaged in an amount in excess of $75,000, to be determined at trial.

WHEREFORE, for the above stated reasons, PRSM demands judgment in its favor on Count II of the Complaint, and against defendants and pray for damages in an amount to be determined at trial, the costs and expenses of this action, including reasonable attorneys' fees and for such other and further relief as to the Court shall deem just and proper.

## <u>COUNT IX: CIVIL RICO AGAINST ALL DEFENDANTS</u>

155.      PRSM incorporates the preceding paragraphs as if set forth herein.

156.      The acts of Defendants, as described of Paragraphs 36-57 and 117-146 of this Complaint, entitle Plaintiff to redress under the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., specifically 18 U.S.C. § 1964(c), in that:

    a.  Defendants conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); and

    b.  Defendants conspired to conduct the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); and

    c.  The activities engaged in by Defendants constituted a "pattern of racketeering activity," as that term is defined in 18 U.S.C. § 1961(5), in that the activities of the defendants constituted offenses involving mail and wire fraud, which acts of mail and wire fraud are described more particularly in the preceding paragraphs of this Complaint, each of which is incorporated herein.

157.      At all times relevant hereto, each of the Defendants herein is and has been a "person," as that term is defined in § 1961(3) of RICO.

158.      In violation of § 1962(a) and (d) of RICO, these Defendants received income that was derived, directly or indirectly, from a pattern of racketeering activity in which each Defendant has participated as a principal and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, an enterprise or enterprises that is or are engaged in, or

the activities of which affect, interstate or foreign commerce, thereby proximately causing injury to Plaintiff's business or property.

159.     At all times relevant hereto, there have existed the following "enterprises," as that term is defined in § 1961(4) of RICO, by which the defendants referenced below committed, aided and abetted, and/or conspired to commit violations of § 1962(a):

a.  The Association-in-Fact-Enterprise: There existed an Association-in-Fact-Enterprise consisting of Progas, Win Propane, Win Electrical, Big River Bend, Ben Winke, Christa Winke, and John Does 1-100 which is referred to herein as the "Association-in-Fact-Enterprise." Each member of the Association-in-Fact-Enterprise is a person or legally incorporated entity that conducted (and conducts) business activities in the United States. The activities of the Association-in-Fact-Enterprise affected interstate or foreign commerce. The Defendants continue their professional and business activities. As alleged in Paragraphs 36-57 and 117-146, the members of the Association-in-Fact-Enterprise performed separate, discrete roles in conceiving and carrying out the schemes to defraud alleged herein, and they made decisions on a hierarchical and consensual basis. The Association-in-Fact-Enterprise had a hierarchical decision-making structure headed, upon information and belief, by Ben Winke and Christa Winke. The Association-in-Fact-Enterprise also had a consensual decision making structure because the Defendants each voluntarily agreed to join the enterprise and each played an active role in its affairs. Each of them was motivated by the desire to earn fees and receive payments derived from the schemes to defraud. The Defendants conducted and/or conspired to conduct the affairs of the Association-

in-Fact-Enterprise through a "pattern of racketeering activity," as that term is defined in § 1961(1) and (5) of RICO. The defendants identified in this paragraph committed, aided and abetted and/or conspired to commit violations of 18 U.S.C: §§ 1341 and 1343 (mail and wire fraud), as described in Paragraphs 36-57 and 117-146, above.

160.    As alleged herein, the RICO enterprises were used as vehicles to carry out fraudulent transactions, including the transaction involving the Coleman loan.

161.    Each of the Defendants named in this count agreed to receive income derived, directly or indirectly, from a pattern of racketeering activity and to use or invest, directly or indirectly, such income in the establishment or operation of the RICO enterprises identified in this count.  Each of the Defendants knew the essential nature and scope of the enterprises and each of the Defendants intended to receive, use, or invest such income.  Under § 1962(d), each of the defendants may be held liable for conspiring to violate § 1962(a) of RICO.

162.    Plaintiff is a "person" within the meaning of § 1961(3) of RICO that has been injured in its business or property by reason of defendants' violations of § 1962(a) and (d).

163.    Pursuant to § 1964(c) of RICO, Plaintiff is entitled to assert this claim and to recover treble its actual damages sustained, as well as the cost of suit, including reasonable attorneys' fees.

WHEREFORE, for the above stated reasons, PRSM demands judgment in its favor on Count III of the Complaint, and against Defendants and prays for damages in an amount to be determined at trial, actual damages to be trebled pursuant to § 1964(c) of RICO, for the costs

and expenses of this action, including reasonable attorneys' fees, and for such other and further relief as to the Court shall deem just and proper.

## DESIGNATION OF PLACE OF TRIAL

The place of trial will be Kansas City, Kansas.

Respectfully submitted,

BAKER STERCHI COWDEN & RICE, LLC

/s/ Bryan E. Mouber
Bryan E. Mouber                       KS #19710
Jonathan E. Benevides                 KS #24424
9393 W. 110th Street, Suite 500
Overland Park, KS 66210
Phone: (913) 451.6752
Fax: (816) 472.0288
Mouber@bscr-law.com

ATTORNEYS FOR
PROPANE RESOURCES SUPPLY AND
MARKETING, L.L.C.